## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JAYME PITTSONBERGER,
on behalf of herself and
all others similarly situated,

 Civil Action No. _____

 Plaintiff,

 vs.

MENU FOODS INC., MENU
FOODS MIDWEST CORPORATION,
MENU FOODS INCOME FUND, and
MENU FOODS LIMITED,

 COMPLAINT - CLASS ACTION
 JURY TRIAL DEMANDED

 Defendants.

## CLASS ACTION COMPLAINT

Plaintiff, Jayme Pittsonberger, individually and on behalf of all others similarly situated, by and through her undersigned counsel, hereby brings this action against Defendants Menu Foods Inc., Menu Foods Midwest Corporation, Menu Foods Income Fund, and Menu Foods Limited (collectively, "Defendants") pursuant to Rule 23 of the Federal Rules of Civil Procedure, for breach of express warranty, breach of implied warranty of merchantability, negligence, unjust enrichment , and violation of New Jersey Consumer Fraud Act and seeks damages, attorneys' fees, and costs on behalf of herself and all others similarly situated (the "Class"), and upon information and belief, alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action for breach of express warranty, breach of implied warranty of merchantability, negligence, unjust enrichment , and violation of New Jersey Consumer Fraud Act to redress the harms resulting from the manufacture, production, and sale

1

by Defendants of contaminated dog and cat food marketed under over 90 brand names.

2.      Defendants manufacture and sell over 90 brands of pet food for cats and dogs, including popular labels like Iams and Eukanuba and private label brands sold at large retail chains. On March 16, 2007, the Menu Foods Income Fund issued a press release announcing the recall of 60 million cans of contaminated dog and cat food manufactured between December 3, 2006 and March 6, 2007. The recall covers the "cuts and gravy" style pet foods in cans and pouches manufactured at two of Menu Foods Limited's U.S. manufacturing facilities - Menu Foods, Inc. and Menu Foods Midwest Corporation, located in New Jersey and Kansas, respectively.

3.      The defective pet food caused Plaintiff and Class members injury, in that Plaintiffs and the Class members purchased and fed defective pet food to their pets which caused injury to said pets in that they became ill through kidney disease, requiring veterinarians visits, medications, hospitalizations and, in some cases, burials of those pets that died due to renal failure caused by the contaminated pet food. Many pets that consumed the recalled tainted food now require ongoing monitoring of their health to ascertain the extent of the damage to their kidneys.

4.      Plaintiff makes the following allegations, except as to the allegations specifically pertaining to Plaintiff and Plaintiff's counsel, based upon the investigation undertaken by Plaintiff's counsel, which included, inter alia, review and analysis of Defendants' website, press releases, news articles, and pleadings filed in other suits.

## PARTIES

5.      Plaintiff Jayme Pittsonberger resides in Alexandria, Virginia. Plaintiff Pittsonberger purchased and fed her cat Nutro, Natural Choice pet food that was manufactured

2

by Defendants during the Class Period. Pittsonberger's cat, named Jada Katrina, became ill and was diagnosed with acute renal failure. Jada was immediately hospitalized at Caring Hands Animal Hospital. In addition to the cost of purchasing the contaminated food, Plaintiff Pittsonberger incurred economic costs in connection with the medical treatment and continued medical care and monitoring of her cat.

6.    Defendant Menu Foods Inc. ("MFI") is a New Jersey corporation, with its headquarters at 9130 Griffith Mogan Lane, Pennsauken, NJ 08110. MFI has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit. MFI manufactures pet food for distribution in the United States. MFI is a wholly-owned subsidiary of Menu Foods Limited, and is ultimately owned or controlled by Menu Foods Income Fund, an unincorporated company with its principal place of business in the Province of Ontario, Canada. Some of Defendant MFI's high managerial officers and agents with substantial authority are also high managerial officers or agents of Menu Foods Income Fund.

7.    Menu Foods Limited ("MFL") is a Canadian corporation located at 8 Falconer Dr., Mississauga, ON , L5N IBI and has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit. MFL is the parent company of, and wholly-owns, both MFI, located in Pennsauken, New Jersy, and MFMC located in Emporia, Kansas.

8.    Defendant Menu Foods Midwest Corporation ("MFMC") is a Delaware corporation, with its headquarters at P.O. Box 1046, 1400 East Logan Ave., Emporia, KS 66801. MFMC has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit. MFMC is a wholly-owned subsidiary of MFL and manufactures pet food for distribution in the United States.

9.    Defendant Menu Foods Income Fund ("MFIF"), an unincorporated company with its principal place of business in the Province of Ontario, Canada. MFIF manufactured the pet food at issue in this action.

10.    The events complained of occurred throughout the United States and in the State of New Jersey.

## JURISDICTION AND VENUE

11.    This Court has original jurisdiction over this class action under 28 U.S.C. §1332(d)(2), (d) (5)(B), (d) (6) because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least Plaintiff and Defendants are citizens of different states.

12.    Venue in this Court is proper in that Defendants transacted business in this county and the conduct complained of occurred in this district, as well as elsewhere in New Jersey.

## FACTUAL ALLEGATIONS

13.    Defendants MFL and MFIF purport to be the leading North American private label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other retail and wholesale outlets. In 2006, MFIF produced more than one billion containers of pet food.

14.    Defendant MFL is the parent company of, and wholly-owns, both Defendant MFI, located in Pennsauken, New Jersey, and Defendant MFMC, located in Emporia, Kansas. MFI and MFMC are two of MFL's manufacturing facilities in the United States.

15.    At least from December 3, 2006 through March 6, 2007, Defendants failed to adhere to proper safety standards and failed to ensure that the pet food they manufactured and

4

sold was free from contamination.  More specifically, on March 16, 2007, Defendant MFIF, the

parent company of MFL, issued a press release whereby it announced the recall of a portion of

the dog and cat food manufactured between December 3, 2006 and March 6, 2007.  The recall

covers the "cuts and gravy" style pet foods in cans and pouches manufactured at two of MFL's

facilities – MFI located in Pennsauken, New Jersey and MFMC in Emporia, Kansas.

16.     Reportedly, 60 million cans and pouches of the pet food were recalled.

17.     The recalled pet food was sold under more than 90 brand names, including

popular labels like Iams and Eukanuba and private label brands sold at large retail chains.  A list

of all brand names that were recalled is contained on the Company's website and is attached

hereto as Exhibit A.  Retailers who sold the contaminated products include Ahold USA, Kroger

Co., Safeway, Wal-Mart, Pet Smart, and Pet Value, among others.

18.     MFL acknowledged receiving complaints in the United States which raised

concern about pet food manufactured since early December 2006, and its impact on the renal

health of the pets consuming the products.  The Company has discovered that timing of the

production associated with these complaints coincides with the introduction of an ingredient

from a new supplier.

19.     Stephen Sundlof, the Food and Drug Administration's (FDA) chief veterinarian,

said that Menu Foods began its own taste tests of its pet food beginning February 27, 2007 in

approximately 40 to 50 pets.  Within a few days, animals began showing signs of sickness.  In

early March 2007, at least seven animals reportedly died.

20.     Menu Foods announced its recall weeks later, on March 16, 2007.

21.     The FDA has reported that it received numerous calls and complaints from

owners of sick and deceased pets, who flooded phone lines at State FDA offices, as well as calls

from veterinarians and pet food companies. See Los Angeles Times, March 20, 2007.

22.     To date, there are 50 confirmed deaths. The FDA expects the death toll to rise.

23.     The FDA said that the investigation is focused on problems with aminopterin in the wheat gluten used by MFL, which MFL claimed had been coming from a new supplier. Wheat gluten is a source of protein and was used to thicken the gravy in the pet food.

24.     On March 30, 2007, the FDA announced that Defendants' recalled pet foods also contained melamine, a chemical used to make plastics. Researchers also found melamine (used to produce plastic kitchen wares and used in Asia as a fertilizer) in the urine of sick cats, as well as in the kidney of one cat that died after eating the Menu Foods' wet food. The Commissioner of the New York State Department of Agriculture and Markets noted that neither aminopterin nor melamine should be in pet food.

25.     On March 30, 2007, MFIF confirmed that on March 6, 2007 it had ceased using the Chinese company that supplied it with the contaminated wheat gluten.

## PLAINTIFF'S INJURIES

26.     Plaintiff Pittsonberger owned a cat named Jada Katrina. During February and March 2007, Plaintiff Pittsonberger fed her cat Nutro, Natural Choice pet food, now listed on the Company's recall list as contaminated products.

27.     Jada is a cat who is approximately 22 months of age. Until ingesting the contaminated pet food, Jada was in very good health and had no recent medical conditions.

28.     On Thursday, March 15, 2007, Plaintiff noticed that Jada had significantly increased thirst and water consumption, as well as urinary output. On the morning of March 17, 2007 she did not eat her breakfast meal. Jada was consuming more water and urinating more than usual, stopped eating, was listless, lethargic, had bad breath, and was sleeping more than

usual. Shortly after this, an e-mail notice from Plaintiff's veterinary hospital was sent regarding the food recall. Plaintiff immediately called and made an appointment for Jada to be seen the very next day.

29.    Plaintiff took Jada to Caring Hands Animal Hospital in Arlington, VA on Sunday, March 18, 2007. Jada underwent a physical exam was administered a urinalysis test. This was done via needle withdraw of urine directly from her bladder, which Jada remained conscious for and had to be physically restrained by two technicians while the veterinarian withdrew the urine. The tests showed unusual elements, and the veterinarian then suggested a more expensive, yet more-conclusive blood test. Jada was physically restrained while several samples of blood were taken to run tests. Being of petite stature, Jada has small blood vessels and thus had to be stuck several times to withdraw the appropriate amount of blood for the tests. Throughout the process, Jada appeared frightened and stressed.

30.    After review of the blood tests, Jada was diagnosed with acute renal failure. The veterinarian explained that Jada's BUN (blood urea nitrogen) and Creatinine levels were extremely high and she had to be admitted immediately for treatment. Jada was immediately admitted to Caring Hands Animal Hospital and intravenous fluids were administered. In addition to this, Jada was started on antibiotics and an appetite stimulant. On March 20th, more blood was drawn and further tests were run. Jada's BUN and creatinine levels had not come down to normal functioning levels. Jada stayed overnight at the clinic for three nights, for a total duration of 72 hours.

31.    Jada was released from Caring Hands Animal Hospital late in the evening of Wednesday, March 21st. Post discharge instructions included continuing treatment at home. It was instructed that Jada have 200 ml of fluid, injected subcutaneously every other day through

Wednesday, March 28th, when she was to return for additional follow-up testing. She was also instructed to be placed on a special diet of 'renal failure' food that could only be acquired at the time directly from the Caring Hands Animal Hospital. On March 28th, additional blood tests were run to check renal activity. The results showed that her renal function levels were now within normal function range. The doctor clearly stated that he was "cautiously optimistic" as the full extent of the damage is still unknown. Jada still requires subcutaneous fluids every three days for a month, at which time an additional full panel of tests will take place, as well as an evaluation to determine if additional critical medical care is required.

## CLASS ACTION ALLEGATIONS

32.    Plaintiff brings this action on her own behalf and on behalf of all other persons similarly situated.

33.    The class which Plaintiff seeks to represent are composed of:

All persons in the United States who have incurred costs as a result of their pets becoming ill or passing away from ingesting any of the pet food brands manufactured by Defendants during the period commencing December 3, 2006, and ending March 6, 2007 (the "Class Period") that were recalled by Defendants.

34.    The class is composed of thousands, and possibly millions, of persons, the joinder of whom is not practicable. The disposition of their claims in a class action will benefit both the parties and the Court. It has been estimated that thousands of cats and dogs have become ill and hundreds have died so far from ingestion of the contaminated pet food throughout the United States during the Class Period, and thus the Class is sufficiently numerous to make joinder impracticable, if riot impossible.

35.    There are questions of fact and law which are common to all members of the class, including, inter alia, the following:

a.    Whether Defendants breached any express or implied warranties when they

8

manufactured and sold the contaminated pet food;

b.    Whether Defendants violated New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*;

c.    Whether Defendants negligently manufactured and sold the contaminated pet food; and

d.    Whether the Class has been damaged, and if so, the appropriate measure of damages including the nature of the equitable relief to which the class is entitled.

36.    The above common issues of fact and law predominate over any arguable individualized issues.

37.    Plaintiff's claims are typical of the claims of the other members of the class because Plaintiff's and all of the Class members' damages arise from and were caused by having purchased and fed the contaminated pet food to their pets. As a result, the evidence and the legal theories regarding Defendants' alleged wrongful conduct are identical for Plaintiff and all of the Class members.

38.    Plaintiff will fairly and adequately protect the interests of the members of the Class, and Plaintiff has no interests which are contrary to or in conflict with those of the Class they seek to represent. Plaintiff has retained competent counsel experienced in class action litigation to further ensure such protection and to prosecute this action vigorously.

39.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the party opposing the class and would lead to repetitious trials of the numerous common questions of facts and law. Plaintiff does not believe that any difficulty will be encountered in the management of this

litigation that would preclude its maintenance as a class action. Plaintiff believes and therefore

avers that claims are small in relation to the costs of an individual suit, and a class action is the

only proceeding pursuant to which Class members can, as a practical matter, recover. As a result

a class action is superior to other available methods for the fair and efficient adjudication of this

controversy.

40.    Proper and sufficient notice of this action may be provided to the Class members

through notice published in appropriate publications.

41.    Plaintiff and the members of the Class have suffered irreparable harm and

damages as a result of the Defendants' wrongful conduct as alleged herein. Absent

representative action, Plaintiff and the members of the Class will continue to suffer losses,

thereby allowing these violations of law to proceed without remedy.

**COUNT I**
**BREACH OF EXPRESS WARRANTY**

42.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully

set forth herein.

43.    Defendants expressly warranted that the contaminated brands of pet food were, in

fact, ingestible food that was safe for consumption by dogs and cats.

44.    In addition, Defendants made numerous express warranties about the quality of its

food and its manufacturing facilities. For example, Menu Foods touts the claim that it

"manufacture[s] the private-label wet pet-food industry's most comprehensive product program

with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in

the United States and Canada.

45.    Members of the Class were induced by Defendants' labeling, advertising and

marketing the contaminated brands of pet food as "food" to rely upon said express warranty, and

10

did so rely in purchasing the contaminated brands of pet food and feeding them to their pets.

46.     In reliance on Defendants' untrue warranties, Plaintiff and the Class purchased the contaminated pet food and fed that food to their pets.

47.     Plaintiff and members of the Class sustained damages as a proximate result of said breach of warranty.

**COUNT II**
**BREACH OF IMPLIED WARRANTY**
**OF MERCHANTABILITY**

48.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

49.     Defendants are merchants pursuant to sections 2-104 and 2-314 of the Uniform Commercial Code with respect to pet foods.

50.     Through Defendants' marketing, labeling, and sales, Defendants impliedly warranted that the contaminated pet food, which was sold to Plaintiff and Class members and fed to their pets, was fit for the ordinary purpose for which it was intended, namely, to safely feed and nourish pets without any resulting negative health effects, pursuant to section 2-314 of the Uniform Commercial Code.

51.     Through Defendants' marketing, labeling, and sales, Defendants knew that Plaintiff and Class members would purchase the contaminated pet food at issue for the ordinary purpose of feeding their pets.

52.     Defendants manufactured, labeled, advertised, sold, and distributed the contaminated pet foods at issue for the ordinary purpose for which it was purchased by Plaintiff.

53.     Plaintiff and Class members purchased and used the contaminated pet foods for the ordinary purposes for which such goods are sold, namely feeding them to their pets.

54.    Plaintiff and Class members relied upon Defendants' representations and claims in purchasing the contaminated pet foods.

55.    The contaminated pet foods purchased by Plaintiff and Class members were unfit for their ordinary purpose when sold.  In fact, such pet foods were contaminated and caused severe illness and/or death of the pets that consumed them.  Therefore, Defendants breached the implied warranty of merchantability in the sale of the contaminated pet foods at issue.

56.    Plaintiff and members of the Class sustained damages as a proximate result of said breach of warranty.

## COUNT III
## NEGLIGENCE

57.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

58.    Defendants owed a duty to pet owners who purchased its products to ensure that their pet food was safe for pets to consume and free from contamination, such that no pets consuming these products would be injured or die as a result of such consumption.

59.    Defendants breached said duty as described herein above when they failed to adhere to proper safety standards and failed to properly ensure the safety of their products when they sold contaminated pet food, proximately causing damage to Plaintiff and members of the Class.

60.    As a proximate result of the Defendants' conduct described herein, Plaintiff and members of the Class have suffered damages as a result and continue to suffer damages as a result of the contamination of Defendants' pet food.

## COUNT IV
## UNJUST ENRICHMENT

61.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

62.     As a direct, proximate, and foreseeable result of Defendants' acts and otherwise wrongful conduct, Plaintiff suffered damages.  Defendants profited and benefited from the sale of their pet food, even as the pet food caused Plaintiff to incur damages.

63.     Defendants have voluntarily accepted and retained these profits and benefits, derived from consumers, including Plaintiff, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, consumers, including Plaintiff, were not receiving products of the quality, nature, fitness, or value that had been represented by Defendants or that reasonable consumers expected.  Plaintiff purchased pet food that she expected would be safe and healthy for her pet and instead has had to now endure the illness of her beloved pet.

64.     By virtue of the wrongdoing alleged in this Complaint, Defendants have been unjustly enriched at the expense of the Plaintiff who is entitled to, and hereby seeks, the disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court.

**COUNT V**
**VIOLATION OF NEW JERSEY'S CONSUMER FRAUD ACT**
**N.J.S.A. 56:8-1, *et seq.***

65.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

66.     Defendants are the researchers, developers, designers, testers, manufacturers, inspectors, labelers, distributors, marketers, promoters, and sellers and/or otherwise released the contaminated pet food into the stream of commerce.

67.     Defendants knew or should have known that the use of the contaminated pet food

causes serious and life threatening injuries to animals, but failed to warn the public, including Plaintiff, of same.

68.    In violation of the New Jersey Consumer Fraud Act, Defendants made untrue, deceptive or misleading representations of material facts to, and omitted and/or concealed material facts from Plaintiff and the Class.

69.    Defendants' statements and omissions were undertaken with the intent that consumers, including Plaintiff, would rely on Defendants statements and/or omissions.

70.    The promotion and release of the contaminated pet food into the stream of commerce constitutes an unconscionable commercial practice, deception, false pretense, misrepresentation, and/or knowing concealment, suppression, or omission of material facts with the intent that others would rely upon such concealment, suppression or omission in connection with the sale or advertisement of such merchandise or services by Defendants, in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*

71.    Defendants concealed, omitted, or minimized the side effects of the contaminated pet food, provided misinformation about risks and potential harms from the contaminated pet food, and succeeded in persuading consumers to purchase for approved use the contaminated pet food.

72.    Defendants' practice of promoting and marketing contaminated pet food created and reinforced a false impression as to the safety of the contaminated pet food, thereby placing pets at risk of serious injuries and potentially lethal side effects.

73.    Defendants intended that others would rely upon its concealment, suppression or omission of the risk of animals ingesting the contaminated pet food.

74.    Defendants' actions in connection with manufacturing, distributing, and

marketing the contaminated pet food as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the New Jersey Consumer Fraud Act, N.J.S.A., 56:8-1 *et seq.*

75.     Defendants acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when committing these acts of consumer fraud.

76.     As a direct and proximate result of the acts of consumer fraud set forth above, Plaintiff purchased unsafe products and incurred monetary expense, risk and injury to their pets previously set forth herein.

### JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues triable by right before a jury.

### PRAYER FOR RELIEF

THEREFORE, Plaintiff prays for judgment as follows:

1.     That this Court certify this action as a Class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), and appoint Plaintiff and her counsel to represent the Class;

2.     That this Court enter judgment and award damages in favor of Plaintiff and the Class, and against Defendants under the theories alleged herein;

3.     That this Court award Plaintiff all attorneys' fees, expenses and costs of this suit;

4.     That this Court award Plaintiff pre-judgment and post-judgment interest at the maximum rate allowable by law, compounded daily; and

5.    That this Court grant such other, further, and different relief that the Court deems

necessary, just, and proper.


Dated: April 3, 2007


Respectfully submitted,


Gary S. Graifman, Esquire

_s/ Gary S. Graifman_
Kantrowitz, Goldhamer & Graifman
210 Summit Avenue
Montvale, New Jersey 07645
Telephone: (201) 391-7000
Facsimile: (201) 307-1086


Gary E. Mason
Donna F. Solen
The Mason Law Firm, L.L.P.
1225 19th Street, NW
Suite 500
Washington, D.C. 20036
Telephone:  (202) 429-2290
Facsimile:  (202) 429-2294

Robert Kaplan
Linda P. Nussbaum
Christine M. Fox
Kaplan Fox & Kilsheimer LLP
805 Third Avenue, 22nd Floor
New York, NY 10022
Telephone:  (212) 687-1980
Facsimile:  (212) 687-7714

Laurence D. King
Kaplan Fox & Kilsheimer LLP
555 Montgomery Street, Suite 1501
San Francisco, California 94111

Telephone: (415) 772-4700
Facsimile: (415) 772-4707

Jeffrey A. Wigodsky, Esquire
Karp, Frosh, Lapidus, Wigodsky & Norwind, P.A.
1133 Connecticut Ave., N.W.
Suite 250
Washington, D.C. 20036
Telephone: (202) 822-3777
Facsimile: (202) 822-9722

Todd M. Schneider
Schneider & Wallace
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105

Joseph M. Vanek
Vanek, Vickers & Masini P.C.
111 S. Wacker Drive, Suite 4050
Chicago, IL. 60606
Telephone:  (312) 224-1500
Facsimile:   (312) 224-1510

Attorneys for Plaintiff and the Class

# EXHIBIT A

# MENU FOODS INCOME FUND



---



Home

Recall Information

Press Release

Cat Product Information

Dog Product Information

FAQ's for Consumers

## Recalled Cat Product Information
### Recall Information 1-866-895-2708

**Variety or Multi-Packs:**

If you are in possession of a variety or multi-pack, please be sure to check the individual can or pouch rather than relying solely on the date coding on the side of the carton.

1. Americas Choice, Preferred Pets
2. Authority
3. Best Choice
4. Companion
5. Compliments
6. Demoulas Market Basket
7. Eukanuba
8. Fine Feline Cat
9. Food Lion
10. Foodtown
11. Giant Companion
12. Hannaford
13. Hill Country Fare
14. Hy-Vee
15. Iams
16. Laura Lynn
17. Li'l Red
18. Loving Meals
19. Meijer's Main Choice
20. Nutriplan
21. Nutro Max Gourmet Classics
22. Nutro Natural Choice
23. Paws
24. Pet Pride
25. Presidents Choice
26. Price Chopper
27. Priority US
28. Save-A-Lot Special Blend
29. Schnucks
30. Science Diet Feline Savory Cuts Cans
31. Sophistacat

Menu Foo
8 Falcone:
Streetsvill
Canada L!

Menu Foods Income Fund - Annual General Meeting

32. Special Kitty Canada
33. Special Kitty US
34. Springfield Prize
35. Sprout
36. Stop & Shop Companion
37. Tops Companion
38. Wegmans
39. Weis Total Pet
40. Western Family US
41. White Rose
42. Winn Dixie

© Copyright 2006, Menu Foods Income Fund, All Rights Reserved.
Best viewed using Internet Explorer.



# MENU FOODS INCOME FUND


Home

Recall Information

  Press Release

  Cat Product Information

  Dog Product Information

  FAQ's for Consumers



Menu Foo
8 Falcone
Streetsvill
Canada Lt

## Recalled Dog Product Information

### Recall Information 1-866-895-2708

**Variety or Multi-Packs:**

If you are in possession of a variety or multi-pack, please be sure to check the individual can or pouch rather than relying solely on the date coding on the side of the carton.

1. Americas Choice, Preferred Pets
2. Authority
3. Award
4. Best Choice
5. Big Bet
6. Big Red
7. Bloom
8. Cadillac
9. Companion
10. Demoulas Market Basket
11. Eukanuba
12. Food Lion
13. Giant Companion
14. Great Choice
15. Hannaford
16. Hill Country Fare
17. Hy-Vee
18. Iams
19. Laura Lynn
20. Loving Meals
21. Meijers Main Choice
22. Mighty Dog Pouch
23. Mixables
24. Nutriplan
25. Nutro Max
26. Nutro Natural Choice
27. Nutro Ultra
28. Nutro
29. Ol'Roy Canada
30. Ol'Roy US
31. Paws

Menu Foods Income Fund - Annual General Meeting

32.  Pet Essentials
33.  Pet Pride - Good n Meaty
34.  Presidents Choice
35.  Price Chopper
36.  Priority Canada
37.  Priority US
38.  Publix
39.  Roche Brothers
40.  Save-A-Lot Choice Morsels
41.  Schnucks
42.  Shep Dog
43.  Springsfield Prize
44.  Sprout
45.  Stater Brothers
46.  Stop & Shop Companion
47.  Tops Companion
48.  Wegmans Bruiser
49.  Weis Total Pet
50.  Western Family US
51.  White Rose
52.  Winn Dixie
53.  Your Pet

© Copyright 2006, Menu Foods Income Fund, All Rights Reserved.
Best viewed using Internet Explorer.